IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JO ANN SIMPSON, individually and as personal representative of the estate of JOSHUA SIMPSON, <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF VIRGINIA, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) 1:16cv162 (JCC/TCB) ) ) ) ) ) |

### **M E M O R A N D U M  O P I N I O N**

This matter is before the Court on Plaintiff's Motion to Reconsider [Dkt. 29]. Plaintiff seeks reconsideration of this Court's Order granting Defendant's Motion to Dismiss [Dkt. 3], and dismissing Plaintiff's Complaint [Dkt. 1-1]. For the following reasons, the Court will deny Plaintiff's Motion to Reconsider.

### **I. Background**

The facts of this case were discussed at length in this Court's previous Memorandum Opinion issued on July 21, 2016 [Dkt. 27], and are discussed here only as relevant to Plaintiff's Motion to Reconsider.

Plaintiff Jo Ann Simpson ("Plaintiff" or "Mrs.

1

Simpson") brings this suit as the personal representative and administrator of the estate of the deceased, Joshua Michael Simpson ("Decedent" or "Mr. Simpson"). Decedent was an individual with a mental illness living in Warrenton, Virginia in 2014. (Compl., ¶¶ 4, 6.) Plaintiff brings claims against Defendant, the Commonwealth of Virginia ("the Commonwealth"); Defendant, Steven Flaherty in his official capacity as the Superintendent of the Virginia Department of State Police ("Superintendent Flaherty"); and Defendants, John Does ("Doe Defendants"), who are currently unidentified police officers employed by the Virginia Department of State Police ("VSP"). (*Id.* at ¶¶ 7-9.) Collectively, the Court will refer to the Commonwealth, Superintendent Flaherty, and the Doe Defendants as "Defendants."

On July 21, 2016, this Court issued an Order and accompanying Memorandum Opinion granting Defendant's Motion to Dismiss and dismissing Plaintiff's Complaint. On August 18, 2016, Plaintiff filed the instant Motion to Reconsider pursuant to Rule 59 of the Federal Rules of Civil Procedure. On August 31, 2016, Defendants filed their Memorandum in Opposition [Dkt. 33]. Plaintiff filed her Reply brief on September 6, 2016 [Dkt. 34]. The motion is set for oral argument on September 22, 2016, at which point it will be ripe for decision.

## II. Legal Standard

Plaintiff asks the Court to reconsider its Order dismissing her Complaint pursuant to Federal Rule of Civil Procedure 59(e). A court may amend a judgment under Rule 59(e) in the following three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Amending a judgment "is an extraordinary remedy that should be applied sparingly." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). In order to justify reconsideration due to clear error, the error cannot be "just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Fontell v. Hasset*, 891 F.Supp.2d 739, 741 (D. Md. 2012)(*quoting TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)(citations omitted)).

## III. Analysis

Plaintiff contends that relief pursuant to Rule 59(e) is appropriate here because: (1) there were relevant developments in Fourth Circuit case law subsequent to oral argument, but prior to issuance of the Order granting Defendants' Motion to Dismiss; and (2) the failure of this Court to "consider these new cases, as well as [unspecified] other

3

factors," when ruling on Defendant's Motion to Dismiss "represents a manifest injustice." (Pl.'s Mem. in Supp. at 2.) The Court will consider each of these bases for reconsideration in turn.

### A. Failure to Consider New Case Law

Plaintiff first argues that her supplemental brief cited "new case law that the Court did not cite in its opinion." (Pl.'s Mem. in Supp. at 2.) Plaintiff is correct that the Court's previous Memorandum Opinion did not cite every case included in Plaintiff's briefings on Defendant's Motion to Dismiss. However, the Court's decision not to cite to the authority offered by Plaintiff did not stem from a failure to consider those cases. Rather, those cases did not appear in the forty-two page Memorandum Opinion granting Defendant's Motion to Dismiss out of a concern for the efficient management of judicial resources, as well as because the Court considered them to be so obviously distinguishable from the case at hand that extended discussion of them was unnecessary. To quell Plaintiff's concern that this Court may have ignored or overlooked relevant case law, the Court will now proceed to discuss and distinguish each case cited by the Plaintiff in her Motion to Reconsider.

#### 1. *Estate of Armstrong v. Village of Pinehurst*

Plaintiff first contends that this Court "ignore[d]

recent Fourth Circuit precedent addressing mental illness," specifically the case of *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th Cir. 2016). (Pl.'s Mem. in Supp. at 5.) Plaintiff seems to argue that *Armstrong* stands for the proposition that the use of force is presumptively unreasonable when deployed against individuals who are mentally ill. It would be far more accurate to say instead that *Armstrong* clarified that mental illness is one of several factors that, when apparent, must be taken into consideration by officers when deciding when and how to use force.

In *Armstrong*, police officers attempted to seize the decedent, pursuant to a mental health custody order, after he had fled from a nearby hospital. *Armstrong*, 810 F.3d at 896-98. The officers were therefore aware of the decedent's mental health issues. The decedent in *Armstrong* reacted by "wrapping himself around a [nearby stop sign]." *Id.* at 896. The decedent "was stationary, seated, clinging to a post, and refusing to move" when the officers decided to use a Taser. *Id.* at 901.

The Fourth Circuit used three factors to determine whether the use of force in *Armstrong* was reasonable: (1) "'the severity of the crime at issue;'" (2) "the extent to which 'the suspect poses an immediate threat to the safety of the officers or others;'" and (3) "'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Id.*

5

at 899 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Because the Plaintiff appears to only take issue with this Court's analysis of the first factor, the second and third factors will not be discussed here.

The first factor—the severity of the crime at issue—weighed against the imposition of force in *Armstrong*, as the decedent had not committed a crime and was minimally dangerous at the time that force was used. *Armstrong*, 810 F.3d at 899. While discussing this factor, the Fourth Circuit emphasized that where "'a reasonable officer on the scene' would ascertain" an individual's mental illness, he or she "must account for [the mental illness] when deciding when and how to use force." *Id.* at 900. The Plaintiff argues that *Armstrong* goes even further, claiming that "officers confronting a person exhibiting conspicuous signs of mental illness . . . *must* deescalate the situation and adjust the application of force downward." (Pl. Mem. in Supp. at 6 (quoting *Armstrong*, 810 F.3d at 899) (emphasis added)). However, the Plaintiff's artful editing of the Fourth Circuit's opinion left out that Court's efforts to carefully qualify this language, as it applies only to officers "who encounter an unarmed and minimally threatening individual." 810 F.3d at 900. The Decedent in the instant case was neither unarmed nor minimally threatening.

As in *Armstrong*, the officers here were initially

6

acting pursuant to a mental health custody order and, as a result, they were aware of Decedent's mental health issues. But that is where the similarities with *Armstrong* end. Going beyond merely resisting, Mr. Simpson barricaded himself inside his house, passed police a receipt indicating he had committed a crime by obtaining a shotgun illegally, and cut off communication with officers after they attempted to subdue him with a Taser. (Compl., ¶¶ 16-17, 23.) When officers deployed flashbangs, the Decedent responded by firing shots outside. (Compl., ¶ 24.) Later, officers made the decision to deploy tear gas. (Compl., ¶ 25.) Throughout the ensuing standoff, the Decedent remained barricaded inside his house, continued to intermittently fire shots outside, and refused to communicate with police. (Compl., ¶ 26.) He later exited the house, firing shots as he did so.[1] (Compl., ¶ 27.) In contrast to *Armstrong*, Mr. Simpson committed a crime. This crime then made it possible for him to be armed and dangerous.

      Indeed, *Armstrong* does not establish that the Plaintiff's mental illness must always weigh *against* the use of force. Just like any other factor, there are circumstances, like those here, where mental illness will weigh in favor of the force deployed. The Fourth Circuit recognized this point in

---

[1] Plaintiff's counsel conceded at the hearing held on September 22, 2016 that when Mr. Simpson came out of his house firing shots at the police, officers on the scene were "in a tough spot." Moreover, "[the officers] may have been faced with a hostile choice at that point."

7

*Armstrong* itself, noting that "[m]ental illness, of course, describes a broad spectrum of conditions and does not dictate the same police response in all situations." *Armstrong*, 810 F.3d at 900.

To illustrate how mental illness may render the use of force less reasonable in some contexts and more reasonable in others, consider the sign post in *Armstrong*. Because the decedent was seated, anchoring himself to the sign post at the time that force was applied, and because that force led to his death, the Fourth Circuit held that "the justification for the seizure [preventing a mentally ill man from harming himself] does not vindicate any degree of force [a Taser] that risks substantial harm to the subject." *Armstrong*, 810 F.3d at 896-97. If, on the other hand, the decedent had uprooted the sign post from the ground and began swinging it wildly at officers and passersby, the sign post's presence may have made the use of force more reasonable. Just as it would be patently absurd to say that the involvement of a sign post always cuts against the reasonability of the use of force, regardless of context, so it would be a distortion of the Fourth Circuit's reasoning in *Armstrong* to say that the decedent's mental illness always cuts against the use of force, regardless of context. The Court read and seriously considered *Armstrong* prior to granting Defendant's Motion to Dismiss. It determined then, and reaffirms now, that

8

when one considers the totality of the circumstances in both cases, they are profoundly different and readily distinguishable.

### 2. *Gandy v. Robey*

Plaintiff next contends that this Court's reliance on *Gandy v.* Robey, 520 F. App'x 134 (4th Cir. 2013) is misplaced. Plaintiff argues that because *Gandy* did not involve the use of force against an individual with a mental illness, it is totally irrelevant to this case. Admittedly, *Gandy* has nothing to say on the role that mental illness plays in assessing the reasonableness of the use of force. However, the Court must consider the totality of the circumstances, "'with an eye towards the proportionality of the force in light of all of the circumstances.'" *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)(quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005)). As discussed above, the mental health of an aggrieved party is only one of many factors that must be weighed. While *Gandy* offered no insight as to the particular impact of Decedent's mental illness on the reasonableness of the force used against the Decedent, it was relevant in assessing the impact of other factors on the use of force as a whole.

### 3. *Washington v. Jurgens*

Plaintiff next argues that the Court failed to consider *Washington v. Jurgens*, 2016 U.S. Dist. LEXIS 86321

9

(E.D. Va. July 1, 2016), which was issued after oral argument on Defendants' Motion to Dismiss, but before the Court ruled on that motion.  Initially, it should be noted that *Washington* is a district court opinion issued by another judge in this Court. It is thus of informative, but not binding, precedential value. Plaintiff argues that this Court should follow *Washington*, as it "is analogous to the facts here." (Pl.'s Mem. in Supp. at 8.) The Court disagrees with this assessment.  *Washington* involved the use of a Taser against an individual who was seated in his vehicle and failed to comply with commands from officers due to physical impairments caused by a stroke. *Washington*, 2016 U.S. Dist. LEXIS 86321, at *2.  The plaintiff in *Washington* "was not behaving erratically, did not have a weapon, brandish anything that looked like a weapon, and gave the [officer] Defendants no cause to believe that Plaintiff was a potentially dangerous individual."  *Id.*  In contrast, Decedent here had engaged in a course of behavior, including firing repeated shots at police, which had given Defendants adequate cause to believe that he was a potentially dangerous individual.  The facts of this case can therefore be distinguished easily from *Washington*.

    *4. Burruss v. Riley*

  Finally, Plaintiff points to *Burruss v. Riley*, 2016 U.S. Dist. LEXIS 77432 (W.D. Va. June 14, 2016), another district court opinion issued between oral argument on

Defendant's Motion to Dismiss and the issuance of this Court's ruling on that motion. In *Burruss*, the plaintiff's Section 1983 claim challenged the validity and reasonableness of the emergency custody order ("ECO") itself. *Id.* at *5. The plaintiff also challenged the use of force by asserting a battery claim under Virginia law.[2] *Id.* Although *Burruss* determined that the removal of the plaintiff from his car "was excessive for the circumstances," it did so only as part of its analysis of the state law claim. *Id.* at *6. Thus, *Burruss* is irrelevant here, as the Plaintiff does not contest the reasonableness of the initial ECO, nor the reasonableness of the subsequent warrants, but rather only the reasonableness of the force used.

*    *    *

Ultimately, Plaintiff's Motion to Reconsider fails to identify any cases of which the Court was unaware or which the Court failed to consider prior to ruling on Defendant's Motion to Dismiss. The remainder of Plaintiff's Motion to Reconsider asserts a patchwork of factual and legal arguments, including both totally novel arguments and several arguments which the Court has already heard and considered when ruling on Defendant's Motion to Dismiss. A Motion to Reconsider is not

---

[2] The plaintiff's complaint in *Burruss* also included an excessive force claim under the Fourth Amendment. The Court did not address this claim in its opinion.

11

the proper channel for Plaintiff to rehash prior arguments or introduce new ones that could have been raised during briefing or argument on Defendant's Motion to Dismiss. *See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)(holding that a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment").

While Plaintiff appears eager to engage in an extended debate on the merits of this Court's ruling on Defendant's Motion to Dismiss, this is not the purpose of a Rule 59(e) motion. Plaintiff has not identified an intervening change in controlling law that would justify granting relief pursuant to Rule 59(e). Accordingly, Plaintiff must identify a "clear error of law" or "manifest injustice" in this Court's prior Memorandum Opinion to justify relief pursuant to Rule 59(e).

B. <u>Clear Error of Law or Manifest Injustice</u>

The only "clear error of law" or "manifest injustice" alleged in Plaintiff's Motion to Reconsider is the allegation that the Court applied an impermissibly stringent standard to Plaintiff's Complaint when ruling on Defendant's Motion to Dismiss. Despite Plaintiff's assertion to the contrary, the Court made every factual inference in the Plaintiff's favor in ruling on Defendant's Motion to Dismiss. Plaintiff identifies

three concrete instances where she believes that the Court made factual inferences from her Complaint in Defendants' favor. Two of the alleged inferences against Plaintiff in this Court's previous Memorandum Opinion warrant further discussion.

First, Plaintiff argues that the Court misunderstood the nature of Decedent's delusions regarding his model of The Bridge restaurant and its potential levitation. Specifically, Plaintiff contends that the Court mischaracterized Decedent as waiting for God to tell him to turn himself in when, in fact, Decedent was only going to continue his holdout if God told him to do so. Whether Decedent thought he was going to receive divine instruction to turn himself in or divine instruction to continue the siege is irrelevant to the Court's prior analysis. The fact remains that Decedent was delusional, armed, and dangerous. The existence of his delusions is more relevant than their precise content. The Court made no inference against Plaintiff in finding that Decedent was delusional, as this fact is readily apparent from the face of Plaintiff's Complaint.

Second, Plaintiff argues that by attributing the actions of the canine unit to the Fauquier County Police Department, rather than one of the named Defendants, the Court drew an inference against the Plaintiff as to who controlled the dogs. (Pl.'s Mem. in Supp. at 4.) Plaintiff is correct that in the facts as alleged in her Complaint, the canine unit received

13

conflicting commands prior to deploying the dog against Decedent. However, Plaintiff's Complaint is also unequivocally clear in identifying the canine unit as under the control and direction of the Fauquier County Police Department, rather than the Virginia State Police. The Court drew no inference at all, let alone one in Defendants' favor, when it determined that the canine unit belonged to the Fauquier County Police Department under the facts alleged.

Plaintiff asserts a hodgepodge of other arguments regarding imposition of the wrong standard and what it believes to be this Court's error in ruling on a statute of limitations defense at the Rule 12(b)(6) stage. None of these additional arguments merits further discussion here. They have been considered, and are lacking in merit.

\* \* \*

Plaintiff has failed to identify any valid grounds for granting relief from this Court's Order dismissing her Complaint under Rule 59(e). Accordingly, the Court will deny Plaintiff's Motion for Reconsideration.

## IV. Conclusion

For the foregoing reasons, the Court denies Plaintiff's Motion for Reconsideration. An appropriate Order shall issue.

|                        | /s/                                |
|------------------------|------------------------------------|
| September 27, 2016     | James C. Cacheris                  |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE |